ALBANY,
Dec. 1832.

Commercial
Bank of Al-
bany
v.
Canal Com-
missioners.

## The Commercial Bank of Albany *vs.* The Canal Commissioners of the State of New-York.

In an *alternative mandamus,* the relator sets forth *his title,* or the facts upon which he relies for the relief sought, and by it the defendant is required to do the particular act asked for, or to shew cause.

The title of the relator to the relief asked must be clearly and distinctly stated in the alternative mandamus, so that the facts alleged may be admitted or traversed ; it is not enough to refer in the writ to the affidavits and other papers on file, on which the order for the mandamus was made : such reference is allowable to shew the amount of a sum of money claimed, but not the right of the relator thereto.

If the writ is defective, either in *form* or *substance,* the defendant may move to quash it.

In a return to such writ, the defendant must either deny the facts stated in the writ, or shew other facts sufficient to defeat the relator's claim.

A return to an alternative mandamus, setting forth or referring to *matters of evidence* from which certain facts may be inferred, instead of positively and distinctly alleging the facts relied upon in answer to the mandamus, is bad, and may be demurred to.

At any time after a return and before a *peremptory mandamus* is awarded, the defendant may object a want of sufficient title in the relator to the relief sought, or show any other *defect in substance ;* though, *it seems,* that after a return, advantage cannot be taken of defects in form.

Error from the supreme court. The canal board of this state, on the third day of March, 1828, adopted a resolution or made an order for an *extra allowance* to N. Allen & Co., contractors on the Oswego canal, in addition to the contract price agreed to be paid to them for building certain locks, &c. in the construction of a part of that canal. The resolution was in these words : " Resolved, that there be allowed to Nathaniel Allen & Co., on their contract to build locks, aqueduct and dam on the Oswego canal, the sum of eight thousand five hundred dollars over and above the contract price, and that the same be paid by the canal commissioners." Two of the firm of Allen & Co. exhibited to the Commercial Bank a copy of the above resolution, certified by the clerk of the canal board, and applied to the bank to have the same discounted or cashed. The bank caused inquiries to be made of the comptroller of the state at what time the canal commissioners

ALBANY,
Dec. 1832.

Commercial
Bank of Al-
bany
v.
Canal Com-
missioners.

would be in funds for the payment of the above sum ; to which the comptroller returned a written answer under date of the 9th April, directed to Allen, one of the contractors, in these words : " In reply to your question when Mr. Seymour will be furnished with funds to pay the extra allowance on the Oswego canal, I have to state, that if the loan advertised on the 17th should be taken, as I believe it will, there will be funds at his command belonging to the Oswego canal after the 21st inst." On the receipt of this answer, the bank, on the 9th April, advanced to N. Allen & Co. the sum of $8,500, deducting the usual discount, and took from them an assignment and order on the copy resolution, directed to H. Seymour, Esq. one of the commissioners, requesting him to pay the amount of the extra allowance to the cashier of the bank, and within a day or two thereafter notice of such transfer was given to Mr. Seymour, the canal commissioner. On the 21st April, 1828, Mr. Seymour apprised the bank that the money ordered by the canal board to be paid to Allen and Co. was not payable until the whole work undertaken by them should be completed, and a final adjustment of their accounts made. On 21st March, 1829, Mr. Seymour paid to the bank $6,911, $\frac{87}{100}$, which was endorsed on the transfer holden by the bank, leaving $1588, $\frac{13}{100}$, the balance of the sum of $8,500, unpaid. In August, 1829, the bank applied to the supreme court for a *mandamus*, directing the canal commissioners to pay to them the above balance ; which application was founded on an affidavit of the cashier of the bank, setting forth the above facts, and stating in addition, that on the 17th March, 1829, the canal board made an order that the sum of $1500 be paid to one James Weed, *out of the sum due to N. Allen & Co. for extra allowances* made to them under their contract to construct locks and dams upon the Oswego canal ; reciting in the order that such sum was allowed to Weed for work done by him as a sub-contractor, he having performed the work and suffered the injury. The affidavit further stated that the said sum of $1500 still remained in the hands or under the control of Mr. Seymour. The motion was further grounded on an affidavit of one of the firm of Allen & Co., stating the circumstances respecting the claim of Weed, and denying his right

to any extra allowance. It further appeared that the claim of Weed was investigated by the canal board previous to the order being made in his favor, and that his right was contested before the board by Allen & Co. The supreme court ordered an alternative mandamus, which was accordingly issued in these words: "The People, &c. to Stephen Van Rensselaer, Samuel Young, Henry Seymour and William C. Bouck, canal commissioners of the state of New-York, greeting. Whereas the President, Directors and Company of the Commercial Bank of Albany have made complaint to us touching the matters herein after contained; and we being willing that due and speedy justice should be done in the premises, do command you by firmly enjoining you to pay the said President, &c. the balance with the interest of the sum of $8,500, ordered by the Canal Board on the third day of March, 1828, to be paid by the Canal Commissioners to N. Allen & Co. on their contract to build locks, aqueduct and dam on the Oswego canal over and above the contract price, deducting therefrom the sum of $6,911,$\frac{87}{100}$, paid by H. S. one of the canal commissioners, to the bank, on the 21st March, 1829, according to the order and certificate of the canal board and assignment to the bank *mentioned in the affidavits on file in our supreme court of judicature,* or signify to us the cause to the contrary thereof," &c. To this writ the canal commissioners made a return that in 1825 Allen & Co. entered into a contract for the construction of extensive portions of the Oswego canal; that in the progress of the work it was found that there were unforeseen difficulties in the way of its completion, and such as under the existing laws of the state would authorize the canal board to make Allen & Co. allowances over and above the contract prices; that in the winter of 1828 Allen & Co., although their contract had not been completed, applied to the canal board to make extra allowances on account of the work done *and to be done* under the contract, and that the canal board, to encourage the contractors to proceed with the work, and to ensure its final completion, proceeded to estimate the amount of extra work that had then been done, *and such extra work as then remained to be done,* so far as the same could be ascer-

ALBANY,
Dec. 1832.

Commercial
Bank of Albany
v.
Canal Commissioners.

ALBANY,
Dec. 1832.

Commercial
Bank of Al-
bany
v.
Canal Com-
missioners.

tained, and settled the amount on *both accounts* at the sum of $8500, and adopted the resolution of the third of March, 1828, set forth in the writ of *alternative mandamus;* that the resolution was passed and the extra allowance made, upon the understanding that the money was not to be paid *unless the contractors should complete the work,* or the canal commissioners should in their discretion think proper to make advances in the progress of the work, more effectually to ensure its final completion ; and that it was never intended to give Allen & Co. or their assigns any right or title to the extra allowance until the contract should have been fulfilled. The canal commissioners admit that they had notice of the advance of the $8500 by the relators to Allen & Co., and of the transfer of the claim to the bank; that they were willing to pay the bank according to the terms of the appropriation made as above stated, but believing that the contract would not be completed if the money should be paid in advance, they refused paying it in any other way than upon the completion of the work, or from time to time, as it should advance, and in such manner as would best tend to ensure a fulfilment of the contract. They then state that Allen & Co. neglected to prosecute the work with diligence, and in August, 1828, wholly abandoned it, leaving a large amount of work undone. That the canal commissioners thereupon employed workmen and proceeded to finish the work contracted to be done by Allen & Co., and in so doing expended the sum of $8,338,$\frac{39}{100}$. They further state that in the spring of 1829 they proceeded finally to settle the contract with Allen & Co. ; that they made a further extra allowance of $4,561,$\frac{51}{100}$, including $1500 directed to be paid to *James Weed,* a sub-contractor under Allen & Co. and that on stating the account by charging the state *with the expence of the whole work* at the contract price, (including the work done by the canal commissioners after the abandonment of the job by Allen & Co.,) and *with the two extra allowances made,* and deducting, 1st. payments made to Allen & Co. ; 2. the amount expended by the canal commissioners ; and 3. the allowance to Weed, a balance of $6,911,$\frac{87}{100}$, was ascertained to be equitably due to Allen & Co., which they, the canal commissioners paid to the Commercial Bank. They

further state that the sum of $1500 directed to be paid to *Weed* was directed to be so paid because Weed had done the work and sustained the loss for which so much of the said extra allowances were made, and that he was justly and equitably entitled to receive the same ; that such sum remains in their hands, and that they are ready and willing to pay it to such person or persons as are justly entitled to receive it. The commissioners conclude their return by praying leave to *refer themselves to the affidavit of Henry Seymour, one of the canal commissioners, the affidavits of John Wood and James Weed, and to a certified copy of the proceedings of the canal board* in relation to the claim of James Weed and their order of allowance of extra compensation in reference thereto, (all of which were attached to the return,) and they prayed that the same might be taken and received as a part of their return.

To this return the relators demurred, and after argument the supreme court gave judgment for the defendants, deciding that inasmuch as the *extra allowance* of March, 1828, was made *as well for extra work to be done* as for that already performed, and Allen & Co. having subsequently abandoned the work in an unfinished state, and the canal commissioners having been obliged to expend a large sum of money over and above the contract price for its completion, they were authorized to retain such portion of the extra allowance as they deemed just, and also to give to a sub-contractor out of such allowance such portion thereof as they deemed him equitably entitled to, espicially as it was doubtful whether the extra allowance thus awarded to the sub-contractor might not with propriety be considered as a portion of the second sum awarded as an extra allowance in the case. That from the nature of the claim transferred, the relators had no other or better rights than Allen & Co. their assignors, and that consequently the defendants were entitled to judgment. The relators sued out a writ of error. The cause in this court was argued by

*L. H. Palmer & D. Cady*, for the plaintiffs in error.

*B. F. Butler & G. C. Bronson*, (attorney-general,) for the defendants in error.

ALBANY,
Dec. 1832.

Commercial
Bank of Albany
v.
Canal Commissioners.

ALBANY,
Dec. 1832.

Commercial
Bank of Al-
bany
v.
Canal Com-
missioners.

The following opinion was delivered by the CHANCELLOR :

An objection was raised on the argument of this cause, to the affidavits and other papers of the relators on which the order for the mandamus was granted, as forming no part of the record in the court below. On the suggestion of one of the members of this court, and to prevent delay, the counsel for the defendants in error consented to waive the objection that those affidavits were not in fact incorporated into the record, reserving, however, the right to insist that they could not legally have been made a part of the record, and that the record was properly made up without incorporating them therein. On a careful examination of this question, I am satisfied these affidavits, &c. formed no part of the record, and could not legally have been taken into consideration by the supreme court in deciding this demurrer to the return of the defendants to the peremptory mandamus. We must therefore lay them entirely out of the question here.

Some difficulty has occasionally arisen from confounding an alternative mandamus with an order to show cause in the nature of an alternative mandamus. Such a mistake arose in the case of *The People* v. *The Delaware Common Pleas*, 2 *Wendell*, 255. The modern practice is not to award a mandamus in the first instance ; but to grant an order to show cause why a mandamus should not issue. In such cases the question is discussed upon the original papers on which the order was obtained and upon the opposing affidavits. If there is no dispute about the facts, and neither party wishes the case to be put in a situation to enable him to review the decision upon a writ of error, the court denies the application, or may award a peremptory mandamus in the first instance ; in which case no formal judgment is given, and no record is made up in the supreme court. A writ of error is by statute given upon a decision of that kind in the particular case of a contest between the state and individuals relative to water privileges on the canal. 1 *R. S.* 235, § 97. In other cases, however, if the facts on which the claim of the relator depends are in dispute, or the parties wish to bring the case before the court of dernier resort, the supreme court awards an alternative mandamus, in which writ the relator sets forth

his title, or the facts on which he claims a right to the relief sought by his application, and the defendant is required to do the particular act, or show why he has not done it. If the writ is defective, either in form or substance, the defendant may move to quash it. *The King* v. *The Bishop of Oxford,* 7 *East,* 345. *The People* v. *Judges of Westchester,* 4 *Cowen's R.* 73. If the writ is not quashed, the defendant must make a return thereto, unless he thinks proper to put an end to the controversy by doing the act required. If he makes a return he must either deny the facts stated in the writ on which the claim of the relator is founded, or must state other facts, sufficient in law to defeat the relators' claim. *Rex* v. *The Corporation of Dublin, Batty's R.* 628. In the case of *The King* v. *The Mayor of York,* 5 *Term R.* 74, Lord Kenyon and Justice Buller said it was too late to take any objection to the writ, after a return thereto. But in this they were clearly wrong, if they intended to apply their remarks to defects of substance. All the authorities, both before and since that decision, show that any defect in substance in the writ, as a want of sufficient title in the relator to the relief sought, may be taken advantage of at any time before the peremptory mandamus is awarded. In the case of *The King* v. *The City of Chester, Holt's R.* 438, the court considered the return insufficient and contradictory ; but they quashed the writ because that was bad also. In *Rex* v. *The College of Physicians,* 5 *Burr. Rep.* 2740, after a return had been made to the writ, the mandamus was quashed because the foundation of the relators' claim, or private statute, was not sufficiently set forth therein. The relators in that case afterwards applied for and obtained another writ in which the foundation of their claim was stated *in extenso,* and upon a return to this last writ the case was finally decided. So in the recent case of *The King* v. *The Margate Pier Company,* 3 *Barn. & Ald.* 221, the counsel for the relator admitted that the relators' title was not set out with sufficient certainty in the writ, but as a return thereto had been made he insisted that the objection came too late. He relied also upon the authority of *The King* v. *The Mayor of York,* to sustain that position. But Abbot, Ch. J. decided it was not too

ALBANY, Dec. 1832.

Commercial Bank of Albany
v.
Canal Commissioners.

ALBANY,
Dec. 1832.

Commercial
Bank of Al-
bany
v.
Canal Com-
missioners.

late to take an objection to the writ ; that if the material facts on which the relator founded his claim were not stated in the writ it would deprive the defendant of the power of traversing them ; for the defendants were only to answer what was alleged in the writ.

Previous to the statute of 9 *Ann, ch.* 20, for rendering proceedings on writs of mandamus, &c. more effectual, 1 *Evans' Stat.* 176, the defendant was holden to great strictness in his return to the writ, as the relator had no remedy but by a suit for a false return. Such is now the law in England in cases not coming within the statute. Our statute is general, and gives the same remedy, by traverse, plea, or demurrer to the return to an alternative mandamus, in all cases. After the passing of the statute of Ann, the proceedings in cases coming within its provisions assumed the form of ordinary suits. The mandamus set out the grounds of the claim of the relator to the relief sought, and answered to the declaration in other suits. To this the defendant made a return, either traversing the facts there stated, or admitting those facts and setting up new matter in avoidance. To the return the relator either demurred, took issue thereon, or pleaded other matters in answer, as in ordinary suits. 3 *Black. Comm.* 265.

The return to the alternative mandamus in this case is objectionable, in form at least, in not charging facts positively and distinctly ; in this respect it is very informal and defective ; instead of stating facts, the return merely sets out or refers to matters of evidence from which those facts are inferred. This is contrary to every principle of good pleading and if the writ in this case had shown a valid title in the relators, I should think the demurrer to the return well taken. But here another well settled principle of pleading applies to the case under consideration. Although the particular pleading demurred to is bad, either in form or substance, yet if some previous pleading is defective in substance, judgment must be given against the party who has committed the first fault. Upon referring to the mandamus, as set out in the record, it shows no right in the relators whatever to the money which the writ commands these defendants to pay. Perhaps it was sufficient in this case, in the writ, to refer to the order and as-

signment annexed to the affidavits on file, to ascertain *what* the defendants were required to pay; but the facts showing *why* they ought to pay that sum, should appear in the writ, clearly and distinctly ; so that the facts there alleged might be admitted, or traversed. 6 *Mod. R.* 310. 7 *East,* 345. 5 *Burr.* 2742. It may sometimes be allowable to refer to extrinsic facts to ascertain precisely what is claimed in a suit ; but the reasons why it is claimed must always appear upon the record, to enable the court to judge of their validity. As the mandamus was defective in substance, I am satisfied that judgment was properly given for the defendants on the demurrer to the return.

ALBANY, Dec. 1832.

Commercial Bank of Albany. v. Canal Commissioners.

The defendants in error have, however, expressed a willingness to waive all questions of mere form, and to have this cause decided on its merits, provided they are not to be met with formal objections on the other side ; I shall therefore proceed to consider the case upon its merits, on the facts as they appear from the affidavits and papers, upon both sides, and as upon an order to show cause why a mandamus should not be granted. It was in this manner, as I understand from the opinion annexed to the case, that the cause was examined and decided in the supreme court.

The Chancellor then proceeded to examine the case on its merits, and came to the conclusion that the judgment of the supreme court ought to be affirmed ; and the court being unanimously of opinion that the judgment of the supreme court ought to be affirmed, it was accordingly affirmed.*

*This cause was argued in the autumn of 1831, and decided in the winter following.