THE PEOPLE *on rel.* BEATY *a.* THE BOARD OF POLICE.

*Supreme Court, First District; Special Term, June,* 1859.

*Again, General Term, November,* 1859.

MANDAMUS.—RETURN.—METROPOLITAN POLICE.—MOTION AND ORDER.

The act establishing the Metropolitan Police District, provided that the members of the old police force should hold office and do duty under the provisions of that act, and as members of the new police force.

*Held,* that an acting member of the old force was to be deemed to have become a member of the new force.

*It seems,* that in a writ of mandamus to compel the commissioners of the latter force to recognize and pay such a member, the allegation that the relator was duly appointed or illegally removed is surplusage. It is sufficient for him to allege that he was a member of the old force, actually filling the office at the date of the act; and any defect in his appointment, or any removal, must be shown affirmatively by the respondents as matter of defence.

Pleas in a return to such a writ, alleging that the relator refused to take office under the new law, that he withdrew from the force, and disclaimed holding office therein, and that he accepted an inconsistent office, though they amount in substance to but one plea, should not be struck out.

Matters merely relevant as evidence,—*e. g.,* the relator's neglect, disobedience, or resistance of orders which might tend to show a resignation or withdrawal,—should not be pleaded, and if they are, may be struck out.

It is no defence to such writ, to allege that another person has been duly appointed, and actually fills the relator's place.

The People *on rel.* Beaty *a.* The Board of Police.

A plea that the relator was duly removed from office, is not inconsistent with the plea that he was never duly appointed.

*It seems,* that the court should not restore to office by mandamus one against whom cause of immediate removal exists.

The cases of The People *a.* Draper, 15 *N. Y.* (1 *E. P. Smith's*) *R.*, 532; and The People *on rel.* McCune *a.* Metropolitan Police, 19 *N. Y.* (5 *E. P. Smith's*) *R.*, 188, commented on

<hr>

A plea that the relator was not duly appointed a member of the old force should not be struck out on motion, but the question of the sufficiency of the defence should be raised by demurrer or replication.

So of a plea that the relator had entered into employment inconsistent with the office, and received compensation therefrom.

On motion for a peremptory mandamus notwithstanding the return made, an order to quash or strike out parts of the return may be made.

## Mandamus.

This was a proceeding instituted by the relator on behalf of himself and others, claiming to be entitled to be recognized, employed, and paid as members of the Metropolitan Police force. The relator obtained an alternative writ of mandamus, requiring the Board of Commissioners for the Metropolitan Police District to restore him to the force, or show cause why they should not do so.

The writ of mandamus was in the following form:

*The People of the State of New York, to the Board of Police of the Metropolitan Police District of the State of New York, Greeting:*

WHEREAS, Thomas Beaty, on the fifteenth day of April, 1857, when the act entitled " An act to establish a Metropolitan Police District, and to provide for the government thereof" was passed and took effect, was a policeman, duly appointed and commissioned by warrant, under the act entitled " An act in relation to the Police Department in the city and county of New York," passed April 13, 1853, and became, by virtue of said act of April 15, 1857, a member of the police force, and patrolman of the Metropolitan Police District thereby constituted ; and whereas, although the said Thomas Beaty can read and write the English language, and is a citizen of the United States, and

resided in the city of New York, within said Metropolitan Police District, during the five years next preceding his appointment as policeman aforesaid, and has never been convicted of any crime, and was and is by law in every respect qualified to hold and discharge the duties of the office of patrolman under said act of April 15, 1857 ;

Nevertheless, you, the said Board of Police, have, without written charges being preferred against him, said Thomas Beaty, as required by law, or any opportunity being afforded him of being heard in his defence, and without cause, unjustly, illegally, and without jurisdiction in that behalf or for that purpose, removed him, the said Thomas Beaty from his said office of patrolman, and deprived, and continue to deprive him of the profits and pay thereof, and refused, and continue to refuse to recognize him as, or permit him to exercise the powers and duties of, patrolman aforesaid of the police force of the Metropolitan Police District, to the grievous damage of the said Thomas Beaty as we are informed by his complaint.

Therefore, we, being willing that full and speedy justice be done in this behalf to him, the said Thomas Beaty, as it is just, command you, firmly enjoining you that, immediately after the receipt of this writ, you restore him to the aforesaid office of patrolman and member of the police force of the Metropolitan Police District, and permit him to exercise the same, and to take the profits and pay thereof, or show cause to the contrary before our Supreme Court, at a special term thereof, held at chambers, in the court-house in the Park, in the city of New York, on the eighteenth day of May, inst., at 10 o'clock in the forenoon, lest complaint come to us by your default; and in what manner this our command shall be executed, make appear to our said court on that day, then sending back to us this our writ.

Witness the Hon. Thomas W. Clerke, one of the justices of our said Supreme Court, at the court-house in the city of New York, the seventh day of May, A. D. 1859.

By the Court.—JOHN CLANCY, Clerk.

JOHN C. DEVEREUX, Attorney for relator.

The return made by the board was as follows:

The People *on rel*. Beaty *a*. The Board of Police.

NEW YORK SUPREME COURT.

[TITLE OF THE CAUSE.]

The Board of Police of the Metropolitan Police District, hereby return to the said writ of mandamus:

*First*. That on and prior to the 15th day of April, 1857, the said relator, though acting and claiming to act as a member of the police force under the act in relation to the Police Department in the city and county of New York, passed April 13, 1853, had not received, and did not possess, any valid appointment or lawful warrant or authority as such member, and had not been duly commissioned or appointed as such member, under the said act.

*Second*. That the said relator refused to take or hold office, and never has taken or held office under the act of the Legislature, to establish a Metropolitan Police District, and to provide for the government thereof, passed the 15th day of April, 1857, or under the Board of Police thereby established.

*Third*. That upon the first meeting of the Board of Police, under the said act of the 15th day of April, 1857, to wit: on the 23d day of April, 1857, the said relator withdrew from the police force established by or under the said act, and disclaimed holding any office, or doing any duty as a member of the police force of the Metropolitan Police District thereby constituted.

*Fourth*. That on the 2d day of June, 1857, an ordinance was passed by the Common Council of the city of New York, and was approved by the mayor of the said city, of which ordinance a copy is hereto annexed, marked " A ;" and the said relator took office, and acted under the said ordinance, until the 3d day of July, 1857.

*Fifth*. That from the passage of the said act of April 15, 1857, for a long space of time, that is to say, until and after the 3d day of July, 1857, the said relator neglected and refused to perform any of the duties of a member of the police force of the said Metropolitan Police district.

*Sixth*. That from the passage of the said act of April 15, 1857, for a long space of time, that is to say, until and after the said

3d day of July, 1857, the said relator neglected and refused to obey any of the orders of the said Board of Police, or to perform any duty under them.

*Seventh.* That from the passage of the said act of April 15, 1857, for a long space of time, that is to say, until, and after the said 3d day of July, 1857, the said relator, by force and violence, opposed the said Board of Police, and the police force under their command, in the lawful discharge of their duties, and against the peace of the people of the State of New York.

*Eighth.* That after the said 23d day of April, 1857, to wit, on or about the _____ day of June, 1857, the said board duly appointed a suitable and duly qualified person to fill the office and perform the duties of a member of the police force of the Metropolitan Police District, in the place and stead of the said relator, and the said person so appointed, thereupon took the said office, and has hitherto held, and still holds the same; and has received, and is still receiving, the pay and emoluments thereof.

*Ninth.* That the police force of the Metropolitan Police District was, at the time of suing out said writ of mandamus, and now is, full, and there has been and is no vacancy, or office, to which the said relator could, or can, be admitted or appointed.

*Tenth.* That the name of the said relator was not on the pay-rolls of the police force of the Metropolitan Police District on the 19th day of April, 1859, and has not been on such pay-rolls at any time since, and there is no money now in the hands, or under the control of the said board, or of its treasurer, and no fund raised or provided by law, which can be applied to the payment of the said relator, or otherwise applied than to the payment of the persons whose names were on such pay-rolls, on the said 19th day of April, 1859, or who might thereafter be appointed.

*Eleventh.* That since the passage of the said act of April 15, 1857, the said relator, has, for his private gain and profit, entered into other employments in no wise connected with, but inconsistent with his duties as a member of said police force, and has received large profits therefor.

*Twelfth.* That written charges having been duly preferred to the said board, against the said relator for disobedience of or-

ders, and other misconduct, of which charges he received due notice, and against which he had an opportunity to defend himself; a trial before the said board was thereupon had after due notice thereof to the said relator, and an opportunity afforded to him to be heard in his defence; and thereupon and on or about the 15th day of June, 1857, an order was made by the said board, in due form and course of law, and that the said relator be dismissed and removed from the police force of the Metropolitan Police District.

All which is respectfully submitted. By order of the board,

T. B. STILLMAN, President.

BROWN, HALL & VANDERPOEL, Attorneys.

The ordinance annexed to that return referred to therein, was the ordinance establishing the Municipal Police.

I. *June*, 1859.—Motion for peremptory mandamus.

Upon this return the relator moved for a peremptory mandamus notwithstanding the return, on the ground that it was inconsistent and unverified. The respondents objecting, that they were entitled to notice of such motion and the grounds of it, the proceedings were adjourned, and notice was given, as follows:

[TITLE OF THE PROCEEDINGS.]

*Gentlemen:*—Take notice, that the following are the objections of the relator above named, to the alleged return of the respondents to the writ of alternative mandamus in his case:

1. That said return does not state facts, but evidence, conclusions, and inferences from evidence so stated.

2. That said return is not positive or certain, but argumentative and evasive.

3. That said return is inconsistent, contradictory, and false upon its face.

4. That said return contains irrelevant and immaterial matter, not responsive to the requirements of the writ.

5. Said return does not answer the material averments and requirements of the writ.

6. That said return is not verified.

7. That said return is not made by the Board of Police, the respondents named in the writ.

[*Date, &c.*]　　　　　　　　　　　　　　　[*Signature.*]

*John McKeon* and *John C. Devereux*, for the motion.—I. The return is false, inconsistent, evasive, impertinent, and not responsive to the writ. 1. If part *first* is not false, all the rest is unnecessary. 2. The allegation in part second, that the relator refused to take office, is no return to the writ, because the first suit admits that on the 15th of April, 1857, the relator was acting as a policeman under the act of 1853; and section 32 provides not only that they shall hold office and do duty under the Metropolitan Police Act, but also as members of the police force, &c., hereby constituted. The return does not deny that the relator was a member of the police force. A man may hold an office and not discharge its duties. 3. Part third is entirely inconsistent with the first and second. He could not *withdraw* if he had no valid appointment, or if he refused to take office. 4. The court will take notice that the ordinance referred to in part fourth is void. Taking office under that does not affect the relator's right to hold this office. 5. Neglect of or refusal to perform duty, is only a cause of removal. 6. Part eighth is only an averment of their own wrong, and is an act to be complained of by the relator. But it is false. 7. The ninth branch does not state what the police force is full of. The men are illegally appointed, unless the relator has been legally removed. This is no answer in any case of title. 8. The tenth return is utterly frivolous. If they can remove by leaving name off the pay-roll, section 7 is useless. 9. Part eleven is entirely irrelevant, and is not responsive to any thing contained in the writ. 10. Part twelve states only conclusions of law, and is not consistent with parts first, second, and third.

II. The objection that the writ states that the relator *is* a citizen, *is* able to read and write, and *is* in office, instead of stating that he *was* in office, &c., on the 15th of April, 1857, is untenable. 1. Having answered the writ, the objection cannot now be taken. 2. It is sufficient if at the present time the relator possesses the qualifications, &c.

III. The return should be verified.

IV. In case of a return like the present, where the relator

does not adopt it, the proper practice now adopted is to move to quash, and for a peremptory mandamus. (2 *Burr. Pr.*, 178, 179, and the mandamus cases there cited.)

V. The motion to quash and for a peremptory madamus in each case should be granted with costs, the Board of Police having for a year and a half disregarded the judgment of this court.

VI. The board admit the rights of the relators by offering to restore them, if they will relinquish their pay due them.

*James T. Brady*, for the relator.—I. A *mandamus* is the appropriate remedy in this proceeding. It is a writ of restitution, and is applied under well-established rules of law for a wrongful dispossession of an office like that in question, which has temporal rights attached to it. It is peculiarly appropriate in this case, because if the relator be held dispossessed under *color of removal*, he is disfranchised as to *all other offices* under the new police law.

II. The court are not to inquire how difficult or inconvenient to the defendants, obedience to the writ may prove.

III. But there is no difficulty in the case as above suggested. There is no particular person holding the office which relator claims; that is a reason why a *quo warranto* could not be applied here, as there is no person to whom it can be addressed. The office of relator never has been vacated. The effect of the writ is to require that he be *recognized* by the board as a policeman. If the new *appointees* be continued in office, that will increase the force beyond its present active number, but there is no legal prohibition against such a result. But however that may be, the usurpers or supernumeraries should have no advantage over the original legal officers, and the Board of Police cannot "take advantage of their own wrong," so as to use either their errors or injustices as reasons why the former should not be corrected or the latter redressed.

IV. But it is said that the alternative writ is defective, and advantage of this may be taken, whatever appears in the return. This is true as to defects in substance, but not as to matters of form.

V. The writ is good, in substance and form. It sets forth facts which, by the judgment of the Court of Appeals in the McCune case, show that when the act of April 15, 1857 (the new police

law), went into effect, the relator was *continued* in office as a policeman, and that no new *appointment* or *oath* was necessary, nor any *acceptance* nor any *submission* by him to the new board. It also alleges his citizenship, residence, capacity to read and write, &c.; but these averments were wholly unnecessary, because his *continuance* in office was by reason *merely* of his being an officer under the act of 1853, and if afterwards it could be made to appear that he was not possessed of all the legal requisites to an appointment under the new law, he might possibly, by an appropriate proceeding, be removed; but, until removed, he would be an officer *de facto et de jure.*

VI. The present motion necessarily involves a motion to quash the return. It is for a peremptory mandamus, notwithstanding such return, and if it be shown that the return is no answer to the alternative writ, the peremptory writ issues, of course. Such has been and is the practice in England, and in our own country. If our motion be in the nature of a demurrer, *ore tenus,* that does not impair the right to the relief we seek, if the return be bad. The relator may elect to demur, plead, or move for a peremptory writ. He made his election, and served a full statement of the objections to the writ, as required by the order of Mr. Justice Sutherland, made May 31, 1859. The justice now presiding is possessed of the whole case, and can make any order in it which is legal and just.

VII. The return is fatally defective. 1. It is not ingenuous and fair. 2. It abounds in negatives pregnant, inconsistencies, repugnant averments, and the tender of wholly immaterial issues. 3. It is inconsistent.

VIII. It is not correct, as argued by our opponents, that the return may contain inconsistent defences, as in " actions" at law, and under the statute allowing several pleas. This proceeding is not and never has been known as an action. The proceeding by mandamus is regulated in all its details by statutes applicable to it exclusively.

IX. Whether or not the relator's name appears on the present pay-rolls of the board, is of no consequence in this proceeding. The mandamus is only asked to restore the relator to office.

*Wm. C. Noyes, W. M. Evarts, D. D. Field,* and *Brown, Hall & Vanderpoel,* opposed.

ROOSEVELT, J.—Beaty, who is the relator or plaintiff in this case, alleges, among other things, that in 1857 he was a mem ber of the old police force of the city of New York; that he had been " duly appointed and sworn;" that he was never " legally discharged or dismissed;" but was unjustly and unlawfully " removed" by the new Board of Commissioners created in 1857, without any " written charges" against him, or any opportunity of defence; and that the commissioners, therefore, unless good cause be shown by them to the contrary, ought to be compelled to restore him and " to permit him to take the profits and salary of the office."

Such is the complaint, and the prayer contained in the alternative mandamus, to which the Police Board were called upon to respond.

Before. considering the answer or " return" made by the commissioners, it will be necessary to advert for a moment to the new police law, passed April 15, 1857, upon the true interpretation of which the present controversy—like the numerous others which preceded or accompanied—depends for its solution.

The main provision is contained in section 32, declaring that the police—meaning the old police—in the cities of New York and Brooklyn (until after the first meeting of the new board) should continue to do duty under the previously existing laws, and that from the time of such meeting they " shall hold office and do duty under the provisions of the act hereby enacted, and as members of the police force of the Metropolitan Police District, hereby constituted."

No new oath of office or other formal acceptance of the new duties is required. They were policemen before, and with the name of patrolmen—a merely fanciful change—they were to be policemen still. They were, under existing laws, policemen for the city of New York; under the new act they were to be policemen for the city, and, nominally, for surrounding territory, although practically and almost exclusively for the city. Their executive head, instead of a " Chief," was to be a " General;" their Captains were to be " Inspectors or Captains," and their Lieutenants were to be " Sergeants." But all the leading powers, and duties, and organization, were substantially the same. In other words the new system, so called, was a modifi-

cation, and not a repeal of the old; and the "persons filling the offices," as the act expresses, "under the old system, were compelled, under their new name, to discharge, as before, the duties of police."

It will thus be seen that it was not necessary for the complainant to aver that he had been "duly appointed," but only to allege, as he does, that he was in fact a "patrolman and one of the police," or, as he might have expressed it, using the language of the Legislature in the same section, "a person filling the office" at the date of the new law. That fact being established, the act itself, as we have seen, declares that his function shall "continue," and that he "shall hold office and do duty" as a member of the police force thereby constituted—subject, of course, as the next section declares, to removal in the manner prescribed, should he not possess, or, rather, should he on trial, after due notice, be found not to possess, the required qualifications. And the same section also shows, that it was no more necessary for the complainant (I use the term as more convenient than relator) to aver in the first instance that he had been "illegally removed," than it was that he had been filling the office, and that he had been ejected—the legality of the one and the illegality of the other, until controverted, are to be presumed. The thirty-third section declares that any member of the old police not possessed of the prescribed qualifications *shall be removed;* which implies that no member on that ground shall be treated as out, until put out by the board; and he must be put out, says the act, in the manner prescribed. "No person shall be removed except upon written charges preferred against him by the Board of Police, and after an opportunity shall have been afforded him of being heard in his defence."

It would seem, from these considerations, to follow that several of the allegations in the writ of complaint are surplusage. If the commissioners intended to dispute the legality of the complainant's original appointment, it was for them to point out the alleged defect, and to set it up by way of affirmative defence on their part. So, also, if they intended to rely on any supposed disqualification, they should have averred in like manner a removal on written charges and due notice, giving the particulars, sufficiently, at least, to show jurisdiction. For the old policemen it was enough to aver that they were actually

filling the office at the date of the new law, and that the new law, by its terms, without any new oath, continued them in office ; whereas the new commissioners, by their acts, without removing them, had treated them as if they were out of office, by refusing to pay the salaries to which by law they were entitled. All the rest was matter of defence, to be averred and proved by the board.

With this preliminary statement I shall now proceed to examine the answer or return of the commissioners, which the complainant's counsel, on various grounds assigned by them, have asked the court to quash or set aside.

[The opinion here recited the return, which is fully given above.]

This return, as will readily be seen, admits, by implication, that Beaty was a policeman *de facto.* He was, therefore, " continued" in office by force of the new law. Whether duly *appointed* by the old board, would seem to be a matter of no consequence. He was recognized by it and paid as a policeman; which is the whole meaning of the terms " the police in the city of New York, officers and patrolmen, shall continue to do duty." " The police in the city," is an expression synonymous with that of " persons filling the office of policemen." And filling an office means, whether *de jure* or not, filling the office *de facto*— that is, acting and being recognized, and being paid, without objection, as such by those who are not to be acted upon, and by those who have the power to control.

If this view be correct, the first plea or branch of the return tenders an immaterial issue.

As to the 2d, 3d, and 4th pleas, they amount in substance to one and the same thing—they allege a withdrawal from, and an unequivocal refusal to act under, the police establishment as newly organized ; in other words, that although for an instant continued in by the will of the Legislature, the complainant went out immediately, as he had a right to do, by his own will.

This plea, when tested by evidence, will probably be found to rest on some verbal nicety ; still, on its face, I see no ground for striking it out. If Beaty, on the passage of the obnoxious law— obnoxious to him—saw fit, by any sufficiently significant and unequivocal act, to resign the office in which the Legislature proposed to continue him, it was clearly competent to him to do

so. It will hardly be contended, under our free institutions, that the Legislature can compel a man to be a policeman against his consent; or at least that any such legislative intention shall be presumed, unless most unequivocally expressed. And if the complainant regularly resigned (a very improbable supposition), he of course cannot be restored by mandamus—he must, in that case, be reappointed by the commissioners, and not by the court. The judiciary, it is needless to say (whether by mandamus or otherwise), have no appointing power.

The 5th, 6th, and 7th pleas are mere surplusage. Neglect, disobedience, resistance, as substantive matters, are grounds for removal. If proved on written charges and due notice, they would warrant a sentence by the commissioners. But till then, the officer would not be out of office. As mere matters of evidence, although not conclusive, they may tend to show a refusal, resignation, or withdrawal, and in that way, support the three previous pleas; but mere evidence needs not to be and should not be pleaded. It has a tendency, besides, when so introduced, to confuse a case, and should, for that reason, be stricken out.

As to the 8th and 9th pleas, they are substantially one, to wit.: that another person has been duly appointed and actually fills the relator's place.

If the relator regularly resigned or was dismissed (two issues already made), this averment, as we have seen, would be immaterial. If he did not resign and was not removed, then his place was not vacant, and no other could be appointed in his stead. Two bodies, whether in political or natural philosophy, cannot occupy the same space at the same time. Besides, how could another person have been appointed "in the place and stead" of the relator, if the relator at the time, had no stead or place which he himself did or could occupy?

These pleas, however, proceed upon the assumption that where an officer has been unlawfully turned out by the commission, he cannot be restored on mandamus by the court, if another, although unlawfully, has been put, or, rather, has been attempted to be put, in his place. In unitary offices, to be filled by a single individual, such, for instance, as the city inspector, that may be the rule. A *quo warranto*, directed to the incum-

bent himself, would seem in such a case to be the appropriate remedy. But the word police is a noun of multitude. It implies in this city more than a thousand men. Against which one, which in particular, of this *quasi* army, is the writ of *quo warranto*, if issued, to be directed? And which one in particular of this numerous force, can be said "to hold in the place and stead of Thomas Beaty?" When the force became full, up to the highest number allowed by law, including the members of the old police, who were continued by operation of the statute, all subsequent appointments, unless preceded by corresponding resignations or removals, were, of course, unauthorized and void. Such, at least, would seem to be the necessary legal conclusion. An appointment, therefore, of that character, in favor of a third person, being a nullity, would be no answer to a *mandamus* in favor of the rightful claimant. It neither filled Beaty's place nor the place of any other legally " continued" policeman. Beaty remained still in, although not recognized by his superiors. And if the place was " full," it was full of Beaty, and of Beaty alone. So that the *mandamus* applied for, although in terms to restore him to the *office*, was really to restore him only to *recognition* and *pay*. What disposition, in that view of the matter, shall be made of the supernumeraries, it will be for the commissioners and Legislature to determine.

As to the 10th and 11th pleas, it is sufficient answer to the objection raised, that no arrears of pay are at present asked. When future instalments, if ever, become due to the relator, and he demands them of the treasurer of the board, it will be time enough for them to plead that they have no funds, and that the Legislature have made no appropriation, or that a discount should be taken from the legal pay to the extent of the emoluments received from another source. So far as entering into other employments is urged for any other purpose, it is mere evidence tending, unexplained, to make out a case of resignation, and as evidence is unnecessary and inadmissible in a pleading.

To the 12th plea, if true, there can be no legal objection. An officer *de facto*, as well as an officer *de jure*, may be tried, and, on conviction, removed. Removal does not imply that the officer was lawfully in, or even, necessarily, that he was actually in.

The commissioners, acting as they are presumed to do, " on behalf of the public," might, to obviate all doubt, remove, I conceive, in a merely colorable case, without committing the public to any implied admission that the person removed had been in. (See Judge STRONG's opinion in the McCune case.)   There is no inconsistency, therefore, in this plea.   It is a legitimate plea also within the *decision* in McCune's case.   Indeed, Mr. Justice Strong, in that case, decided that " it would undoubtedly be a sufficient objection to the writ, if (meaning without any actual removal by sentence) it appeared clearly that there had been sufficient *cause* for the removal of the relator."   The court would not be guilty of the folly of commanding the board to put the relator into office, if, beyond dispute, on the facts existing, he must necessarily and properly be turned out of it the next minute, or, at least, as soon as heard.

In the present plea the defendants not only set forth, if true, a clear *cause* for removal, but removal itself, after a regular trial. They allege that written charges were duly preferred of disobedience of superiors, that due notice was given, and that a due order of dismissal after trial was entered ; and although the probabilities may be, that the notice given, in point of fact or law, was not sufficient, and that the order, on that ground, as decided in Gorman's case, was a nullity, yet for the purposes of the present motion, and until a regular trial can be had, the law requires me to assume the truth of the averment that due notice was given, there being, as yet, no allegation or proof of its falsity.

At the same time, without expressing any opinion on the fact, I may be permitted to say that nothing is to be ultimately gained on either side by the litigation of a fictitious case, or by interlocutory triumphs on mere questions of form.   In the language of the printed points submitted by defendants' counsel, " This is a controversy which ought not to be made dependent for its determination upon any technical considerations whatever."   It is sufficiently embarrassed by intrinsic difficulties, and by what I conceive to be contradictory decisions, without superadding mere questions of form.   I say contradictory decisions, because, in the first case discussed in the Court of Appeals, and in which the constitutionality of the new Police Act was settled (15 *N. Y. R.*, 532), it was held by a majority of the judges that the police

contemplated by that act, even as to the old police force, was a creation of new offices, and came within the provision declaring that "all officers whose offices may be *hereafter created* by law (that is, after 1846), shall be elected by the people, *or appointed as the legislature may direct.*" In other words, by the State, instead of the local authorities—whether legislative or executive —and that as to the old police force, the act was at one and the, same time a "direction" that *they* should be appointed to the newly-created office of "patrolmen" by the Senate and Assembly, and a fulfilment of that direction by a simultaneous appointment as directed, in gross of the whole of the old force, under the general description of "the police in the city of New York" then doing duty, instead of a special designation of each individual man by name. Whereas by the subsequent decision, made two years afterwards in the McCune case,* by another majority of the same tribunal—four of the former judges having in the interim gone out and four others been "selected" in their place— it was held out that the office of patrolmen under the new act, so far as the old force was concerned, was not a new office, and did not require a new appointment or a new oath or acceptance ; in other words, to use the language of one of the majority, it was, "in terms, a mere continuance in office," in an office existing before the adoption of the constitution, and not newly created by subsequent enactment. "The officers designated were to *continue* to do the same duties as before, and to hold, in effect, the same office, but under a different title." Now, as the legislature had no power to alter the mode of appointment to an existing office, the principles of the second decision, if applied to the facts involved in the first, must, it will be seen, necessarily have resulted in a determination adverse instead of favorable to the constitutionality of the new law. We have thus two adjudications for our guidance, of equal authority, giving, on the point involved, directly opposite interpretations to the statute whose provisions we are to apply. According to the one, the office of patrolmen under the new act, "being a newly-created office, and other than a county, town, city, or village office" (Judge DENIO, at p. 556), it would only be necessary, in answer to the writ of mandamus, to show, which could be done by very slight circum-

* Peoule *on rel.* McCune *a.* Metropolitan Police, 19 *N. Y.* (5 *E. P. Smith*) *R.*

stances, an omission or non-acceptance of the tendered appointment. According to the other, being an old office, in which the incumbent was *continued* "with substantially the same duties," under "a mere change of name" (Justice STRONG), "no personal acceptance was necessary," and consequently to deprive the incumbent of his existing rights and emoluments, either an unequivocal resignation by positive act with that intent must be shown, or a judicial sentence of removal after a regular trial and conviction according to law. In the case of McCune, the attempt was made to do both; and in both respects the attempt failed of success. The alleged removal of "James McCune" turned out to be a sentence pronounced by the commissioners against "James M. Line;" and thus, as Judge STRONG expresses it, with "no judgment against him, he had been actually ejected from office." And as to the alleged resignation, the commissioners, instead of showing any acts or expressions of McCune with that intent, proved the most unequivocal determination on his part (evinced as well by acts as words) to hold on to the old office, although under the advice of his old superiors he declined, like many others, to recognize its newly appointed, and very nearly, as the opinions show, unconstitutionally appointed chiefs.

With these views of the difficulties of the whole subject, I deem it not out of place to suggest, as I have already done on former occasions, that instead of six hundred actions, or *quasi* actions, with all their forms and technicalities, "the parties to the questions in difference," as the Code expressly and wisely permits, should "agree upon a case containing the facts upon which the controversy depends, and present a submission of the same in court, to be heard and determined at a general term, and judgment rendered thereon as if an action were depending."

· Should this suggestion not be adopted, an order will be entered, in the single proceeding now under review, quashing the return to the writ of mandamus, so far as it conflicts with the views above expressed, with liberty to the defendants to amend in five days after notice, and to the plaintiffs to reply or demur in five days thereafter.

II. *November*, 1859.—In pursuance of this decision an order

was entered, from which the Board of Police now appealed to the general term.*

*William Curtis Noyes, William M. Evarts, David Dudley Field*, and *Brown, Hall & Vanderpoel*, for the appellants.— I. The order is erroneous, because it departs altogether from the motion, and the notice of motion. The application was for a peremptory mandamus, which the court decided against. There the matter should have dropped. To proceed, and give the relator something for which he had not applied, and of which no notice had been given to the defendants, was error.

. II. The order was erroneous, also, for the reason that the relator's motion being denied, judgment should have been thereupon given against him. The motion for a peremptory mandamus, notwithstanding the return, is of the nature of a demurrer to the return; and a decision against the relator is a dismissal of his application.

III. If, however, the motion were to be regarded as a motion to strike out, the order was erroneous, for the reason, that even if the defences considered by this court bad, and stricken out, were not good defences, the defendant ought to be allowed to retain them upon the review, that they may present the question of their sufficiency to the appellate court.

IV. The defences stricken out were, however, all of them good defences. The first defence is good, because a policeman *de facto* and not *de jure*, has no right to a mandamus. The fifth defence is good, because a neglect and refusal to perform any of

---

* The form of the order as settled was as follows:

"A return having been made to the alternative mandamus issued in this case, and the relator having presented seven written objections to said return, and the same having been argued by the counsel for the respective parties, and due deliberation having been thereupon had, and it appearing to the court that the said objections are in several particulars well founded,

. "Ordered, that the first, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh articles or branches of the said return be stricken out, or quashed; and no amendment consequent upon such alterations being suggested by the respondents, and the usual time for the relator to reply or demur having expired, it is further ordered, that such time be extended till the expiration of five days from the date of this order, with liberty to either party, on two days' notice, in case no plea or demurrer to the return so modified shall be interposed, to notice the matter for a hearing as a non-enumerated motion, to be heard and disposed of on the return as modified by this order."

the duties of a policeman, is a good reason for not retaining him. This the Court of Appeals held in McCune's case. The same may be said of the sixth and seventh defences. The eighth defence is good, because the appointment of a person in the relator's place, gives that person a right to litigate the relator's title; and the proceeding by mandamus is inappropriate. The ninth defence is good, for a like reason as the eighth. The tenth defence is good, because this is a mandamus as well for the pay as for the office. The eleventh defence is good, because the relator's engagement in other and inconsistent employment would disqualify him from holding, at the same time, an office in the police. He cannot have at the same time two inconsistent employments; and holding one is an abandonment of the other.

V. As the case was presented upon the motion, no question could arise respecting the different defences, whether they are consistent with each other or not; because the motion for a peremptory writ admits the truth of the facts alleged in the defences; and if any one of them constituted a good answer to the mandamus, the motion must be denied. But if otherwise, yet the writ itself was fatally defective, and its defects can be objected to, after a return, and at any time before judgment. (The People *a.* Ransom, 2 *Comst.*, 490; Keen *a.* Low, 25 *Eng. L. & E.*, 13; *East R.*, 89; *Tapping on Mandamus*, 309.)

VI. But if the writ had been free of all defects, the relator's motion, which is for a peremptory mandamus, notwithstanding the return, could not prevail, for many reasons; the first of which is, that none of the objections stated in the written notice served by the relator, can be taken on a motion for a peremptory writ. They could only be taken on a motion to strike out or quash. (*Crary Spec. Pro.*, 295; 2 *Burrill's Pr.*, 179; Commercial Bank *a.* Canal Commissioners, 10 *Wend.*, 25; The People *ex rel.* Snow *a.* Cayuga C. P., 10 *Ib.*, 632; Domina Reg. *a.* The Mayor, &c., of Derby, 2 *Salk. R.*, 436; Wright *a.* Fawcett, 4 *Burr's R.*, 2041; The King *a.* The Mayor, &c., of Cambridge, 2 *Term R.*, 456; The King *a.* The Mayor of York, 5 *Ib.*, 66; The King *a.* The Archbishop of York, 6 *Ib.*, 493; The People *ex rel.* Atkins and another *a.* Van Leuven, 8 *How. Pr. R.*, 358; The People *ex rel.* Argyle, &c., Plank Road Company *a.* The Commissioners of Highways, &c., of Fort Ed-

ward, 11 *Ib.*, 89.) The motion for a peremptory writ, in the present stage of the proceedings, is in the nature of a demurrer *ore tenus* to the return, and admits its truth. (The People *ex rel.* Bentley *a.* The Commissioners of Highways of Hudson, &c., 7 *Wend.*, 474.) A special demurrer is never allowed in mandamus. (The People *ex rel.* Musgrove *a.* N. Y. C. P., 9 *Wend.*, 429.) And a general demurrer would not lie for inconsistency between different defences.

VII. The motion for a peremptory writ cannot be made till after the relator has had the time to plead or demur, given by rule 51 of the court. The notice of hearing at a special term could not be given till this time had elapsed.

VIII. The defendants have, by law, a right to set up as many defences as they suppose to exist. (2 *Rev. Stats.*, 352, §§ 4, 9; The People *a.* Jones, 18 *Wend.*, 601.) Mandamus is an action. (The People *ex rel.* Bendon *a.* The County Judge of Rensselaer, 13 *How. Pr. R.*, 399.) The only qualification to this is the right of the relator to move that the defendants be put to their election, when there is a real incompatibility between the defences. (Murray *a.* Smith, 1 *Johnson's cases*, 105; Doyle *a.* Moulton, *Ib.*, 246; Le Conte *a.* Pendleton, *Coleman's cases*, 77; Doyle *a.* Moulton, *Ib.*, 91; 2 *Johns.*, 437; 4 *Burr*, 2041; *Tapping on Mand.*, 8, *note Y.*, 309, 352, and 7; 10 *Wend.*, 30, 32; *Tapping on Mand.*, 349.) The return should not omit any of the defences. The ancient strictness is not required. The courts are very much disinclined *even to quash* for inconsistency. (See the cases—The King *a.* The Mayor of Cambridge, 2 *Term R.*, 461; The King *a.* The Mayor, &c., of York, 5 *Ib.*, 70; The King *a.* The Archbishop of York, 6 *Ib.*, 495; Rex *a.* The Churchwardens of Taunton, &c., *Cowp. R.*, 413; Wright *a.* Fawcett, *Burr*, 2041; The King *a.* The Mayor of London, 9 *B. & C. R.*, 1; The King *a.* Nockolds, 10 *A. & E.*, 248.)

IX. The several defences set up by the return are not inconsistent. There can be no inconsistency where all the alleged *facts can* be true. That is the case here; every allegation of a fact may, by possibility, be proved. There is, therefore, no contradiction in terms or in substance.

*Gilbert Dean, John McKeon,* and *John C. Devereux,* for the respondent.

By the Court.*—Roosevelt, J.—Considering that the question, whether an acting municipal policeman not duly appointed under the old law was, nevertheless, continued under the new law, until removed by the commissioners as contended by the relator, is not entirely free from difficulty, the court are of opinion that the first clause of the return to the alternative mandamus should be allowed to stand, subject to replication or demurrer, as the relator may be advised.

As to the eleventh clause, which alleges that the relator, since the passage of the Metropolitan Act, entered into other employment inconsistent with his duties as a policeman, and received large compensation therefrom, the court are of opinion that that also, for the like reason, should be allowed to stand.

In these two particulars, therefore, the order appealed from will be modified, and, in other respects, affirmed, without costs.

---

## VAN ALEN a. FELTZ.

*Supreme Court, Third District; General Term, May,* 1859.

LIMITATION OF ACTIONS.†—CAUSE OF ACTION.

Under section 73 of the Code, excepting from the provision requiring a new promise to be in writing, cases "where the right of action had already accrued;" the new promise, not the original contract, is to be deemed the cause of action.

The conflicting cases on the construction of sections 73 and 110 reviewed.

Appeal from a judgment.

The cause was tried at the Columbia circuit in September, 1857, before Justice Deadatus Wright, without a jury, who,

---

* Present, Roosevelt, P. J., Clerke and Sutherland, JJ.

† Delavan *a.* Florence (*N. Y. Common Pleas; Special Term, April,* 1858).—This case came up on a motion for leave to issue execution.

Brady, J.—The plaintiff obtained a judgment in the Marine Court on the 27th day of January, 1849, and on the 23d of May, 1857, filed a transcript thereof in