PEOPLE ex rel. JENNINGS v. JOHNSON, Fire Com'r.

(Supreme Court, Appellate Division, Second Department.   April 3, 1914.)

1. MANDAMUS (§ 187*)—DENIAL OF PEREMPTORY WRIT—APPEAL—CONCLUSIVE-
   NESS OF VERDICT.
   There having, after verdict for relator in mandamus on all the facts
   contained in the alternative writ, been merely a motion for a peremptory
   writ, the verdict is, on appeal from the denial of the motion, not open to
   review, but conclusive on the facts litigated at the trial.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 427–437;
   Dec. Dig. § 187.*]

2. EQUITY (§ 76*)—LACHES—INSANE PERSONS.
   Laches cannot be imputed to one of unsound mind.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. § 241; Dec. Dig.
   § 76.*]

3. MANDAMUS (§ 143*)—LACHES.
   One bringing mandamus for correction of the amount of his pension
   named in the order of his retirement from the fire department, to have
   it correspond to the amount to which he was entitled under the statute,
   is not to be charged with laches under the same rule as in case of ap-
   plication for reinstatement.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 282–285;
   Dec. Dig. § 143.*]

4. MANDAMUS (§ 164*)—OBJECTIONS AFTER RETURN.
   After return by defendant in mandamus, he cannot object to defects of
   form, but only to want of title in relator to the relief sought, or other
   defects in substance.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344–360; Dec.
   Dig. § 164.*]

5. MANDAMUS (§ 73*)—TO FIRE COMMISSIONER—UNAUTHORIZED CHANGE IN
   ORDER OF RETIREMENT.
   The fire commissioner's order of retirement of a member of the force,
   fixing his pension at the amount he was entitled to under New York City
   Charter, § 790 (Laws 1897, c. 378), having after it went into effect been
   changed to reduce the amount, without any attempted exercise of au-
   thority by the commission, the member is entitled to a peremptory writ
   of mandamus for correction thereof.
   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 115, 135, 144–
   149; Dec. Dig. § 73.*]

Appeal from Special Term, Queens County.

Mandamus, on the relation of John Jennings, against Joseph John-
son, as Fire Commissioner.   From a final order denying application for
a peremptory writ, relator appeals.   Reversed and remitted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and
PUTNAM, JJ.

Augustus L. Richards, of New York City, for appellant.

Frank Julian Price, of New York City (James D. Bell, of Brooklyn,
on the brief), for respondent.

JENKS, P. J.   The relator moved for an alternative writ of man-
damus.   The writ was allowed, the defendant made return, the issues

were tried at Trial Term, the jury returned its verdict for the relator upon all the facts contained in the writ, but a motion thereupon made for a peremptory writ at Special Term was denied, and the relator appeals from the order of denial.

[1] The verdict of the jury is not before us for review upon the facts, inasmuch as no motion was made for a new trial, ordered entered thereupon, and appeal taken therefrom. People ex rel. Berlinger v. Wells, 178 N. Y. 415, 70 N. E. 926. It must therefore be regarded as conclusive upon the facts litigated at trial. People ex rel. McDonald v. Clausen, 163 N. Y. 523, 57 N. E. 739. Consequently the following facts were before the Special Term:

The relator, a member of the fire force ranking as an engineer, was retired from active duty and placed upon the retired list by an order of the commissioner of fire, made, entered, and promulgated on June 5, 1899, to become effective at 8 a. m. of June 6, 1899. The order recited, whereas it appeared from the report of the medical officers of June 1, 1899, that the said relator was totally and permanently physically disabled for performance of duties, and such inability was caused in or induced by the actual performance of his duties, that under the provisions of section 790 of chapter 378, Laws of 1897, the said relator was retired at an annual pension. The amount of the pension originally named in the order was $800 per annum. On June 5, 1899, the order was entered, officially recorded and transmitted to the quarters of relator's company about 6 p. m. of that day. After 10:20 a. m. of June 6th, erasures and substitutions were made in said order, which had been called back, and also in the records in the office of the fire commissioner, by which the figures 800 were erased, and in place thereof the figures 533.33 were substituted, and a similar change was made in the paper purporting to be a copy of the order filed in the pension bureau. The said medical certificate referred to in said order was changed by inserting the word "not," so that it appeared that the relator was not injured in the line of duty. But the order in its present form still recites the certificate of the medical examiners as showing that the relator was permanently injured in the line of his duty. The changes in the order and records were made by a clerk, who did not remember who directed him, who could not remember whether it was the commissioner or the secretary. The clerk did not remember whether he had an order to make the change, but "must have." The said insertion of the word "not" was made by one of the medical examiners by way of correction to "conform" to the wishes of the other physicians. Whatever change was made was made in the medical office. But he who made the change did not recall any time when it was changed. The certificate might have been sent back to him later. In June, 1898, the relator went into the hold of a fire boat to clean out ashes from the rear of the boiler. That work required a lantern. The lantern suddenly went out and left the relator in darkness. He seized the lantern to relight it, and burned himself so that in starting back he accidentally struck his head against an iron bulkhead. In consequence of his injuries and within the next month, the relator was adjudged insane, was incarcerated in two asylums and one sanitarium, and remained insane until in or about 1913. In May, 1913, he underwent a

second surgical operation, requiring trephining, which restored him to sanity. The relator now remembers that he received his pension every month, and that he signed a paper of some kind. He was released from Bloomingdale Asylum and went or was taken to Ireland by his brother, who had been sent for, and when he came back he testifies that he signed a number of papers; and subsequent to October, 1912, he appeared at the pension bureau and signed receipts—a part of the time before his last operation and a part of the time afterwards. But between October, 1909, and October, 1912, he received his pension through a guardian. These proceedings were begun in July, 1913.

[2, 3] The opinion at Special Term shows the denial was in the exercise of discretion "upon the ground of the relator's laches in not making his application for many years, although throughout the period he received without question the pension at the yearly rate of $533.33," and the single authority cited is People ex rel. Miller v. Sturgis, 82 App. Div. 580–583, 81 N. Y. Supp. 816, appeal dismissed 178 N. Y. 632, 71 N. E. 1137.

I think that laches cannot be attributed to the relator. A finding of fact binding upon the court is that, shortly after the accident, the relator became insane and remained insane until in or about the year 1913, which latter period is made more definite by the testimony of the surgeon who performed the second operation, as May, 1913. As we have seen, this proceeding was begun in July, 1913. An insane person cannot be guilty of laches. Pomeroy on Equity Jurisprudence (Pomeroy's Equitable Remedies, vol. 1) § 30, says:

"Laches cannot be imputed to one of unsound mind; and this rule holds, although the next friend who brings the suit is clearly guilty of laches."

See, too, Am. & Eng. Ency. of Law (2d Ed.) pp. 107, 108.

In Cyc. vol. 16, p. 168, it is said:

."Laches cannot be imputed to one of unsound mind, and mental affliction not wholly incapacitating plaintiff may excuse delay where defendant is not prejudiced."

See, too, Dodge v. Cole, 97 Ill. 338, 37 Am. Rep. 111; Trowbridge v. Stone, 42 W. Va. 454, 26 S. E. 363; Kidder v. Houston (N. J. Ch.) 47 Atl. 336.

In Laws of England, by Earl Halsbury (volume 13, p. 170), it is stated:

"As regards capacity, there is no acquiescence, and laches is not imputed, while the party is under the disability of infancy or lunacy."

Further we held in Matter of Ramsay v. Lantry, 123 App. Div. 71, 107 N. Y. Supp. 828, that the rule of laches declared by the courts in respect to applications to be reinstated in an office or place has no application where the statute duty of the fire commissioner was to fix the pension at $800 and he had fixed it at $533.33, for the reason that a person dismissed should be prompt to seek relief and not wait until another had "become seasoned to his place, or the condition of the department has become adjusted to his absence," but that such reason does not apply where one asked but for what he was entitled to, and the relief afforded could harm none other. And we expressly named

and thus practically distinguished the sole case cited by the learned Special Term in its opinion in this case.

[4, 5] Upon such procedure as was followed in this case, a relator has not an absolute right to the peremptory writ. For a defendant "may object to a want of sufficient title in the relator to the relief sought, or show any other defect in substance," though he cannot, after return, object to defects of form. Commercial Bank v. Canal Commissioners, 10 Wend. 25, affirmed as the rule in People ex rel. D., etc., R. R. Co. v. Batchellor, 53 N. Y. 128, 13 Am. Rep. 480; People ex rel. Fogarty v. Cassidy, 118 App. Div. 695, 103 N. Y. Supp. 671; People ex rel. Ajas v. Dept. of Health, 138 App. Div. 561, 123 N. Y. Supp. 294. But I think in this case the relator was entitled to the writ. The order of retirement was made pursuant to section 790, c. 378, of the Laws of 1897, that provides that the amount of the annual pension in case of total permanent disability caused or induced by the actual performance of duties shall be one-half of the annual compensation if the condition of the pension fund warrant. It was established that the relator's compensation at the time of his retirement was $1,600 per annum, and that the pension fund was adequate. The order was originally made, published, entered, and transmitted in accordance with this statute, and the relator was accordingly retired. It became effective at 8 a. m. on the 6th of June. The verdict determined that the pension determined by the order when it went into effect was at the rate of $800 per annum. It does not appear that the subsequent changes were made by an attempted exercise of authority by the commissioner of fire. If it did so appear, then an interesting question would be presented, whether, after the determination had been made and an order thereon had gone into effect, the commissioner could arbitrarily, without notice or further proceeding, reduce the pension by inserting a lesser sum in his order and in his official entries. For the statute provides that such pension when granted shall not be revoked, repealed, or diminished.

The remedy of mandamus was sought properly. Ramsay v. Hayes, 187 N. Y. 367, 80 N. E. 193; Ramsay v. Lantry, supra.

The order is reversed, with costs, and the case remitted to the Special Term for the issuance of a peremptory mandamus. All concur.